# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

US Nitrogen, LLC,

                Plaintiff,     Case No. 1:16-cv-00462

v.                                   Michael L. Brown
                                      United States District Judge
Weatherly, Inc.,

                Defendant.

_____/

## OPINION AND ORDER

Defendant Weatherly, Inc. ("Weatherly") moved for partial summary judgment. (Dkt. 29). The Court granted Plaintiff US Nitrogen, LLC's ("USN") request for oral argument on the motion and held a hearing. *See* Dkt. 50. For the reasons below, the Court grants Weatherly's motion.

**I.    Background**

This is a breach of contract case arising from the design and construction of an ammonium nitrate solution plant. USN hired Weatherly to provide engineering services related to the construction. Dkt. 33-1 at ¶ 2; Dkt. 29-3. The parties entered into a contract for those

engineering services. *Id.* The parties agree that they are sophisticated business entities, that they engaged in arm's-length negotiations over the contract, and that they had several individuals, including attorneys, review the contract before signing it. Dkt. 29-2 at ¶¶ 1, 21-26; Dkt. 33 at ¶¶ 1, 21-26.

Constructing the plant cost more money and took longer than the parties initially anticipated. Dkt. 18 at ¶¶ 33, 34. And after construction was complete, USN discovered cracks in the concrete foundations of compressors used in the production of the ammonium nitrate solution. Dkt. 18 at ¶ 56; *see also* Dkt. 29-2 at ¶ 32. USN notified Weatherly of the problem, and Weatherly recommended several repairs or modifications. Dkt. 18 at ¶ 67. USN also sought advice from two other engineering companies, both recommending that USN remove and redesign the entire plant foundation rather than simply making the repairs Weatherly suggested. *Id.* at ¶¶ 62-63; Dkt. 33-1 at ¶ 27. The engineering companies also concluded that Weatherly's initial design for the compressor foundations could not support the dynamic motion of the compressors during production. Dkt. 33-1 at ¶¶ 29, 33. USN hired other companies (not Weatherly) to redesign and reconstruct the compressor foundations.

At about the same time, USN determined that Weatherly's design for certain piping systems within the plant was incomplete and erroneous. Dkt. 33-1 at ¶¶ 37-39. USN instructed Weatherly to stop working on the piping design. *Id.* It then hired another company to complete that work. Dkt. 33-1 at ¶¶39-42.

USN believes that Weatherly is responsible for design defects in the plant and for the more than $30 million in costs and expenses that USN incurred correcting them. Dkt. 18. at ¶ 74. USN sued Weatherly asserting claims for breach of contract, professional negligence, negligent or fraudulent misrepresentation, bad faith, and breach of express warranty. No motions to dismiss were filed. After conducting discovery, Weatherly moved for partial summary judgment on the application of a limitation of liability provision purportedly capping the damages USN may seek against Weatherly. *See generally* Dkt. 29. USN requests a ruling that the contract contains an enforceable limitation of liability provision, the provision caps the damages USN may seek to $2,203,800, and the contract prevents USN for recovering consequential damages. USN is correct on all accounts.

## II. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material facts exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'" *Am. Fed'n of Labor & Cong. Of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The moving party bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. The movant is not, however, required to negate the non-movant's claim. Instead, the moving party may meet his burden by "showing – that is, pointing to the district court – that there is an absence of evidence to support the non-moving party's case." *Id.* at 324. After the moving party has carried its burden, the non-moving party

4

must present competent evidence that there is a genuine issue for trial. *Id.*

The Court views all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But "the mere existence of some factual alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

## III. Discussion

### A. The Contract Provision is Valid and Enforceable

Georgia law recognizes the freedom of parties to contract, unless the contract is contrary to statute or public policy. *Precision Planning, Inc. v. Richmark Communities, Inc.,* 679 S.E.2d 43, 45-46 (Ga. Ct. App. 2009); *see also* O.C.G.A. § 13-8-2(a). "Contracts may be avoided by the courts as against public policy only in cases free from doubt and where the injury to the public is clear." *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x. 191, 203-04

(11th Cir. 2007) (citing *Emory Univ. v. Porubiansky*, 282 S.E.2d 903, 904 (Ga. 1981)).

Georgia, like many states, enforces limitation of damages provisions (sometimes called limitation of liability provisions) between sophisticated business persons. *See 2010-1 SFG Venture LLC v. Lee Bank & Trust* Company, 775 S.E.2d 243 (Ga. Ct. App. 2015). Georgia Courts have held that "a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, . . . except when such an agreement is prohibited by statute." *Lanier At McEver, L.P. v. Planners And Engineers Collaborative, Inc.*, 663 S.E.2d 240, 242 (Ga. 2008) (quoting *Smith v. Seaboard Coast Line R. Co.,* 639 F.2d 1235, 1239 (5th Cir. 1981)). Georgia, however, has an anti-indemnification statute that precludes some limitations of liability related to construction contracts:

> An . . . an agreement . . . in connection with . . . a contract or agreement relative to the construction, alteration, repair, or maintenance of a building . . . purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract . . . against liability or claims for damages . . . arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee . . . is against public policy and void and unenforceable.

O.G.C.A. §13-8-2(b).

The contract that USN and Weatherly negotiated has a provision that purports to limit Weatherly's liability to USN resulting from the construction project. Section 5-1-23 states that:

> Weatherly's total aggregate liability to [USN], except with respect of Weatherly's cost of performing the Work under the Contract, for all causes including defects, Weatherly defaults, default of any warranties, or guarantees, patent infringement, or otherwise, **shall not exceed fifteen percent (15%) of the Price**.

Dkt. 29-3 (emphasis added). Weatherly alleges that this is a simple limitation of damages provision and is enforceable under Georgia law. USN disagrees and argues that the provision is an indemnification provision that violates Georgia law.

Georgia's anti-indemnification statute prevents a building contractor, subcontractor, or owner from "contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied." *Smith v. Seaboard Coast Line R. Co.*, 639 F.2d 1235, 1242 (5th Cir. 1981). The Georgia Supreme Court has explained that it prevents one party to a construction contract from relieving another party to that

7

contract from liability for injuries to third parties. In *Lanier At McEver, L.P. v. Planners And Engineers Collaborative, Inc.*, a construction company sued an engineering company for damages arising from the alleged negligent design of a storm-water drainage system. The contract between the parties limited the engineering company's liability. 663 S.E.2d at 241-42. Specifically, it stated that the construction company would limit the engineering's liability to it and "to all construction contractors and subcontractors on the project ***or any third parties*** for any and all claims" to the total fees the engineering received on the project. *Id.* at 241. (emphasis added).

The construction company argued that the provision was unenforceable under Georgia law. The Georgia Supreme Court agreed. The Court explained that "a provision in an agreement whereby a building contractor purports to waive liability for property damages allegedly resulting from the sole negligence of the contractor's agents or employees is void and unenforceable." *Id.* at 242 (citing *Borg-Warner Ins. Fin. Corp. v. Executive Park Ventures*, 400 S.E.2d 340, 341 (Ga. Ct. App. 1990)). The Court found the contract at issue violated this rule because it required the construction company to indemnify the engineer for all

8

liability, including liability to third parties. *Id.* at 243 (it is an indemnity "particularly regarding claims for which [the engineer] may be solely negligent for injuries to third parties"). The Supreme Court explained that "[t]his complete avoidance of liability to third parties for sole negligence in a building contract is exactly what O.C.G.A. § 13-8-2(b) prohibits." *Id.*

The *Lanier* decision turned on that issue – whether the clause eliminated liability to third parties for all claims. Indeed, the Court held that "[n]othing in O.C.G.A. § 13-8-2(b) permits a construction party to shift its **third-party liability** for its sole negligence to another contractor, no matter how savvy the parties or how high the damages cap." *Id.* (emphasis added). The Court also compared the provision at issue before it to a contractual provision found to be enforceable in *Valhal Corp. v. Sullivan Assoc., Inc.* 44 F.3d 195 (3d Cir. 1995). In doing so, the Court noted that the *Valhal* provision – like the provision USN and Weatherly negotiated – only limited one party's liability to the other party (and subcontractors) but not its liability to other third parties. *Id.* at 243-44 (parties "did not agree that it would limit the liability of the architect regarding 'any third parties for any and all claims'"). The Court

held that any language providing indemnifying against all third-party claims "violates the intent of O.C.G.A. § 13-8-2(b)." *Id.; see also Precision Planning,* 679 S.E.2d at 47 (Georgia law "does not permit a construction party to shift its third-party liability for its sole negligence to another contractor").

Section 5.1.23 of the contract between USN and Weatherly provides no such protection. It limits Weatherly's liability only to USN, *not* to third parties. Two sophisticated parties drafted this narrow provision. It does not reference indemnity rights and names no parties besides USN or Weatherly.[1]

The Georgia Court of Appeals, applying *Lanier*, has found such a provision enforceable under Georgia law. In *RSN Properties, Inc. v. Engineering Consulting Services, Ltd.*, 686 S.E.2d 853 (Ga. App. 2009), a real estate developer entered into a contract with an engineering form for

---

[1] That the words "indemnify" or "hold harmless" do not appear in a limitation of liability provision is not dispositive of whether it should be construed as an indemnity provision. *See Old Republic Nat. Ins. Co. v. Panella*, 734 S.E.2d 523, 526 (Ga. Ct. App. 2012); *George R. Hall, Inc. v. Superior Trucking Co.,* 532 F.Supp. 985, 993(II)(B) (N.D. Ga. 1982) (holding that court must construe meaning of indemnity contract and "[n]o particular words or talismanic language is necessary") (citation omitted). But the lack of indemnification language is noteworthy and supports the Court's reading of the contract.

10

professional services. The parties negotiated a contract, including a provision nearly identical to the provision here. The *RSN Services* provision limited the engineering company's liability only to the real estate company that hired it. *Id.* at 854. It did not require the real estate developer to indemnify the engineering company against liability for claims by third parties or in any way seek to limit the engineering company's liability to third parties. *Id.* The Georgia Court of Appeals held that this provision was fundamentally different from the indemnification provision at issue in *Lanier* and fell into the "general rule" in Georgia that "a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy. *Id.* at 854. Because the provision did not limit the engineering company's liability to third parties, the Court held that is "represented a reasonable allocation of risks in an arms-length business transaction and did not violate the public policy underlying" the anti-indemnification statute. *Id.*

These Georgia cases control the outcome here. The agreement between Weatherly and USN represents a reasonable allocation of risk between these two sophisticated businesses. It poses no public safety,

11

health, or welfare concerns as Weatherly remains liable to third parties for any negligence or misconduct. It is enforceable.[2]

USN's additional arguments against enforcing the damages cap likewise fail. USN, for example, argues that Georgia law allows no party to indemnify another party against building code violations. *See* Dkt. 33-2 at 1-4. USN cites no Georgia case or other controlling authority to support this proposition. Any such cases would also be irrelevant as

---

[2] USN cites several cases striking contractual provisions under O.C.G.A. § 13-8-2(b). Each of those cases, however, involved a contract that required one party to indemnify or hold harmless the other party for all claims, including claims by third parties. *See Kennedy Development Co., Inc. v. Camp*, 719 S.E.2d 442, 444 (Ga. 2011) (voiding provision requiring homeowners association to "indemnify, defend, and hold [the developer] harmless"); *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.,* 53 F. Supp. 2d 1361, 1368 (N.D. Ga. 1999) (voiding provision requiring contractor indemnify owner "from and against any and all losses, claims, liens, demands and causes of action of every kind and character"); *Bicknell v. Richard M. Hearn Roofing & Remodeling, Inc.,* 318 S.E.2d 729, 732 (Ga. Ct. App. 1984) (voiding provision "that purported to insulate [the contractor] from any liability whatsoever"). For the reasons stated above, these cases are consistent with the Court's determination that the provision between Weatherly and USN is enforceable. USN also cites cases from other districts applying non-Georgia case law to non-Georgia anti-indemnification statutes to strike provisions that it argues are "functionally the same as Section 5.1.23." *See* Dkt. 33-2 at 7-8 (citing *Omaha Cold Storage Terminals, Inc. v. The Hartford Ins. Co.*, 2006 WL 695456 (D. Neb. Mar. 17, 2006) (applying Nebraska law) and *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1277 (Alaska 1994) (applying Alaska law)). Those cases are not persuasive.

Section 5.1.23 is not an indemnification or "hold harmless" provision. The Court also rejects USN's argument that the provision is unenforceable because it exculpates Weatherly for bad faith and gross negligence. *See* Dkt. 33-2 at 19-25. Again, Section 5.1.23 is a cap on damages, not a hold harmless clause. This distinction is important. While the law does not favor a party's attempt to *exonerate* itself for willful acts or gross negligence, sophisticated business entities may *limit their liability* for such acts arising out of performance of the contract. *See, e.g., Jacobson Warehouse v. Schnuck Mkts.*, 4:17-cv-00764, 2018 U.S. Dist. LEXIS 117590, at *5-6 (E.D. Mo. Jul. 16, 2018); *see also Precision Planning*, 679 S.E.2d at 46 (sophisticated parties may contract to limit liability to each other); *RSN Properties*, 686 S.E.2d at 854–55 (similar). USN cites no cases to the contrary.

### B. The Cap on Liability

As stated above, the contract provision at issue caps Weatherly's total liability to USN at "15% of the Price." Weatherly contends that the term "Price" is defined as $14,692,000, so its liability is limited to $2,203,800 (15% of $14,692,000). USN contends that the term "Price" is not defined in that way and that the dollar figure in the contract was

13

merely the initial estimated price. USN also claims the parties intended for the cap on damages to be based on the actual final price paid to Weatherly. Since, USN paid Weatherly $20,120,104.93 over the life of the project, it claims the cap on damages is $3,018,105.

When interpreting a contract under Georgia law, a court must first "decide whether the language is clear and unambiguous." *CareAmerica, Inc. v. Southern Care Corp.*, 494 S.E.2d 720, 722 (Ga. Ct. App. 1997). If it is, the Court simply enforces the contract "according to its plain terms." *Id*. When the language of a contract is plain and unambiguous, no additional construction by the Court is required or permissible and "the terms of the contract must be given an interpretation of ordinary significance." *Fernandes v. Manugistics Atlanta, Inc.*, 582 S.E.2d 499, 502 (Ga. Ct. App. 2003).

If the contract is ambiguous in some respect, however, a court "must apply the rules of contract construction to resolve the ambiguity." *CareAmerica*, 494 S.E.2d at 720. "[I]f the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *Id*. "The construction of a contract is a question of law for the

courts . . . as is the existence or nonexistence of an ambiguity in a contract." *Avion Systems, Inc. v. Thompson*, 666 S.E.2d 464, 467 (Ga. Ct. App. 2008).

The contract between Weatherly and USN is not ambiguous. Section 1.1.1 of the contract is entitled "Price." It states that "Weatherly proposes to offer Detailed Engineering for an estimated price of $14,692,000 (the "Price") (Fourteen Million Six Hundred Ninety-Two Thousand US Dollars)." Dkt. 29-1 at 9. It then provides details about costs that are and are not included in the Price. *Id.*

The contract assigns a value to the term "Price." First, the contract states the numerical value ($14,692,000), and then, it writes out the numerical figure. There is no other plausible interpretation of the contract. In the limitation of liability provision, the parties then agreed to limit Weatherly's exposure to fifteen percent of the "Price." *Id.* at 52.

The contract language supports USN's contention that the term "Price" was based on an estimated price at the beginning of the contract. But nothing suggests they intended to expand Weatherly's liability exposure to fifteen percent of the final price as USN asks this Court to rule. The plain language of the contract shows that the parties agreed to

15

limit Weatherly's exposure to fifteen percent of that "Price," even if it was an estimate of the amount Weatherly would ultimately be paid under the contract. Had the parties intended otherwise, they would not have used the defined term "Price" in the limitation of liability provision. Instead, the parties would have drafted that provision to state that Weatherly would be liable for 15% of the final price or the amount it ultimately received under the contract. They did not.

These sophisticated parties executed an unambiguous contract that limits Weatherly's liability to fifteen percent of the defined term "Price." When the language of a contract is plain and unambiguous, no additional construction by the Court is required and "the terms of the contract must be given an interpretation of ordinary significance." *Fernandes*, 582 S.E.2d at 502. Weatherly's aggregate liability to USN is, therefore, capped at $2,203,800.

### C. The Limitation of Liability Applies to Repair and Redesign Costs

The limitation provision at issue limits Weatherly's liability to USN "except with respect of Weatherly's cost of performing the Work under the Contract." USN argues that this exception allows it to recover everything it paid to other companies to correct or repair Weatherly's

defective designs. Dkt. 33-1 at ¶ 18. Thus, USN argues, Weatherly is still liable beyond the limitation for the millions of dollars it spent making the plant operable. *See* Dkt. 33-2 at 13-17. Weatherly disagrees and argues that the exception relates to Weatherly's *internal* costs associated with any re-engineering in the form of salaries or hourly wages paid to Weatherly's own engineers. Dkt. 38-1 at 9. According to Weatherly, it does not include costs USN decided to pay others for the work.

If this was ambiguous, the parties' inconsistent interpretations might preclude summary judgment. But again, the language is clear, and the construction of an unambiguous contract is a question of law for the Court. *See CareAmerica*, 494 S.E.2d at 722; *Avion Systems, Inc. v. Thompson*, 666 S.E.2d at 467. The limitation of liability provision excepts **Weatherly's cost** of performing any work on the plant, *not* USN's costs should it decide to repair the plant either on its own or using a vendor other than Weatherly. USN cannot rely on language that excepts "Weatherly's cost" to except its own costs incurred.

USN claims that the contract should be construed against Weatherly, the alleged "drafter." But both parties drafted the contracted.

To be sure, Weatherly provided the initial draft, but the parties then engaged in negotiations and revisions. *See* Dkts. 29-11, 29-12; *Stonegate Bank v. TD Bank, N.A.*, 596 Fed. Appx. 834 (11th Cir. 2015) (holding that when parties are both sophisticated entities and rule of interpretation against the drafter is "overcome by the strength" of other rules). Both parties scrutinized the language and ultimately approved it.

Any damages USN may seek for expenses related to repairing or correcting the alleged defective design are subject to the aggregate damages cap.

### D. The Contract Bars Consequential Damages

In its final argument, Weatherly contends that USN has waived its right to recover consequential damages. Section 5.1.20 provides:

> Weatherly shall not be liable to [USN] for consequential or contingent damages, or loss of production, business, or profits for any reason. [USN] shall not be liable to Weatherly for consequential or contingent damages, or loss of production, business, or profits for any reason.

Dkt. 29-3 at 51. The Eleventh Circuit has enforced similar contractual waivers of consequential damages. *See, e.g., Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 850 (11th Cir. 2016). "Under Georgia law, [t]o the extent that consequential damages are recoverable

18

in breach of contract actions, a clause excluding such damages is valid and binding unless prohibited by statute or public policy." *Silverpop*, 641 F. App'x. at 857 n.9 (quoting *Mark Singleton Buick Inc. v. Taylor,* 391 S.E.2d 435, 437 (Ga. Ct. App. 1990)). USN did not respond to Weatherly's motion on this issue, and there does not appear to be any contention that the consequential damages waiver is somehow void. The Court thus affirms that the waiver of consequential damages is enforceable.

## IV. Conclusion

As a result, the Court hereby **GRANTS** Weatherly's Motion for Partial Summary Judgment. (Dkt. 29).

**IT IS SO ORDERED.**

Dated: September 19, 2018
Atlanta, Georgia

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE